UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OMARGADZHI MAGOMEDOV,

                    Petitioner,

        v.

PAMELA BONDI, et al.,

                    Respondents.

Case No. C26-0521-SKV

ORDER GRANTING IN PART PETITON FOR WRIT OF HABEAS CORPUS

## I.    INTRODUCTION

Petitioner Omargadzhi Magomedov is currently detained by U.S. Immigration and Customs Enforcement (ICE) at the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington.  He filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody.  Dkt. 8.  Petitioner, who proceeds through counsel, asserts that he is entitled to release because removal to his native country, Russia, is not reasonably foreseeable and his continued detention is therefore in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001).  *See id*. at 3, 21-22.  He also seeks injunctive relief related to re-detention and third-country removal.  *See id*. at 22-26.  Respondents filed a return to the petition, Dkt. 12, together with supporting declarations of ICE Deportation Officer Karl Douglas, Dkt. 13, and

- 1

Respondents' counsel Jennifer Wong, Dkt. 14, and Petitioner filed a reply to the return, Dkt. 16. This matter is now ripe for review.

The Court, having considered the parties' submissions and the governing law, GRANTS the petition in part and ORDERS that Petitioner be released from detention within twenty-four (24) hours, but DENIES without prejudice the injunctive relief requested.

## II.   BACKGROUND

Petitioner is a native and citizen of Russia.  *See* Dkt. 13, ¶3.  He entered the United States on August 19, 2021, was paroled for a period not to exceed August 19, 2022, and thereafter remained in the United States before he was re-detained by ICE on March 22, 2025.  *Id*., ¶¶3-5; Dkt. 14, Ex. 1.

On the same day that he was re-detained, Petitioner was issued a Notice to Appear (NTA) charging him with being removable pursuant to Immigration and Nationality Act (INA) § 212(a)(7)(i)(I), *see* 8 U.S.C. § 1182 (a)(7)(A)(i)(I) (immigrant who at the time of application for admission was "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality"), and placing him into removal proceedings.  Dkt. 13, ¶6; Dkt. 14, Ex. 2.  On June 20, 2025, Petitioner was ordered removed to Russia and his applications for asylum, withholding of removal under the INA, and withholding under the Convention Against Torture were denied.  Dkt. 13, ¶8; Dkt. 14, Ex. 3.

Petitioner does not have a valid, unexpired passport that would permit his removal to Russia.  *See* Dkt. 8 at 5.  He complied with a June 27, 2025, request from ICE to assist in the completion of a travel document request (TDR) form.  *See* Dkt. 13, ¶9; Dkt. 14, Ex. 4.  However,

- 2

to date, ICE has yet to request a travel document from Russia.  *See* Dkt. 8 at 5; Dkt. 15-1 at 1; Dkt. 16 at 1; *see also* Dkt. 13, ¶¶11-18.

On February 12, 2026, Petitioner filed an application to proceed *in forma pauperis* and his petition for writ of habeas corpus, challenging his immigration detention under the United States Constitution, the INA and its implementing regulations, the Convention Against Torture (CAT), and the Administrative Procedure Act (APA).  Petitioner argues that:  (1) his continued detention violates the Due Process Clause of the Fifth Amendment because there is no significant likelihood he will be removed in the reasonably foreseeable future; (2) he is entitled to due process in relation to any new re-detention; (3) he is entitled to release due to Respondents' failure to comply with applicable regulations; (4) any attempt to carry out his removal to a third country requires notice and a meaningful opportunity to be heard in reopened removal proceedings, as mandated by statute, the Constitution; and applicable regulations; and (5) Respondents' third-country removal program is punitive in nature and execution and is therefore unconstitutional under the Fifth and Eighth Amendments.  *See* Dkt. 8 at 21-26.  He seeks immediate release from detention and injunctive relief relating to any future re-detention or third country removal.  *See id*. at 26-27.

### III.   LEGAL STANDARDS AND DISCUSSION

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026).  "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013), and may dispose of habeas matters "as law and justice require," 28 U.S.C. § 2243.

- 3

The INA expressly permits detention of noncitizens who were admitted to the United States but subsequently ordered removed during immigration proceedings. *See* 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). Section 1231(a) governs the detention and release of noncitizens such as Petitioner who have been ordered removed, and it provides that the Department of Homeland Security (DHS) is required to detain a noncitizen during the 90-day "removal period." 8 U.S.C. § 1231(a)(2). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens or to release them on supervision. *See* 8 U.S.C. § 1231(a)(6). Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely. *See Zadvydas*, 533 U.S. at 682.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States. *See id.* at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id*. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id*. If the government is unable to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

A.      Indefinite Detention

Petitioner argues his removal to Russia is not reasonably foreseeable and that his continued detention therefore violates *Zadvydas*. Dkt. 8 at 21-22. The parties agree that

- 4

Petitioner is subject to a final order of removal issued on June 20, 2025, and that he has been detained since that time.  In total, Petitioner has been detained for almost nine months pursuant to his final order of removal, and therefore almost three months beyond the presumptively reasonable period recognized in *Zadvydas*.

Petitioner notes that, in the more than eight months since the final order of removal, ICE has yet to even request a travel document from Russia.  *See* Dkt. 8 at 5; Dkt. 15-1 at 1.  ICE, in fact, did not prepare a "fully filled" form that could be utilized in the process of obtaining a travel document for Petitioner until *after* Petitioner initiated this habeas proceeding.  *See* Dkt. 13, ¶17 (attesting to an internal agency request for a "fully filled" form on February 16, 2026, which was "sent back as requested"); Dkt. 14, Ex. 4 ("Information for Travel Document or Passport" form with a date prepared of February 14, 2026).  Further, the U.S. Government has classified Russia as "uncooperative", a label attached to countries that "hinder[] ICE's removal efforts" by refusing to conduct consular interviews or accept charter removal missions, having an unacceptable ratio of releases compared to removals and/or average time from final orders of removal to removal, or "denying or delaying issuance of travel documents, such as passports." Dkt. 8, Ex. 1 at 8 & n.4 (November 2024 ICE publication).  These facts "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  *See, e.g., Lapshin v. Bondi*, C25-2245-KKE, 2026 WL 71407, at *3 (W.D. Wash. Jan. 9, 2026) (finding same where petitioner showed ICE had made no progress towards obtaining a travel document in over eight months, that it was unlikely Russia, an "uncooperative" country, would process petitioner's travel documents in the reasonably foreseeable future, and that additional steps, including a required interview, would be required for Russia to process a travel document request) (citations omitted).

- 5

Respondents assert that they believe there is a significant likelihood Petitioner will be removed to Russia in the reasonably foreseeable future, but do not identify any evidence supporting that belief.  They point only to the fact that they promptly obtained Petitioner's assistance in relation to the TDR form, and that they have since engaged in internal agency correspondence regarding the status of that form.  *See* Dkt. 12 at 6; Dkt. 13, ¶¶9-19. Respondents' unsuccessful efforts to complete the form do not suffice to rebut Petitioner's showing.  *See, e.g., Lapshin*, 2026 WL 71407, at *3-4 (finding representation that ICE was actively working to obtain a travel document for removal to Russia insufficient and noting failure to contest evidence as to Russia's "uncooperative" status).

"Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) (citations omitted). Here, Respondents offer no evidence whatsoever to support their contention and therefore do not meet their burden to rebut Petitioner's showing that there is no significant likelihood of removal in the foreseeable future.  Petitioner is, as such, entitled to release from detention.

B.      Other Arguments and Requests for Injunctive Relief

Petitioner raises arguments associated with re-detention, pointing to both his due process rights and Respondents' obligations under 8 C.F.R. § 241.13, and third country removal.  Dkt. 8 at 22-26.  He seeks release due to Respondents' failure to comply with their regulations.  *Id*. at 23, 26-27.  He seeks injunctive relief barring his re-detention without due process and providing that the government may not otherwise re-detain him without:  (1) obtaining a valid travel document to Russia; (2) providing that document to his counsel; (3) offering him the opportunity to leave on his own within two months; and, (4) if he does not leave, permitting the government

- 6

to re-detain him provided they have already made concrete arrangements for him to be put on a flight to Russia in the reasonably foreseeable future. *Id*. at 27. He also seeks injunctive relief barring his removal to a third county without due process or his removal to any country where he is likely to face imprisonment or punishment. *Id*.

The relief Petitioner seeks in relation to 8 C.F.R. § 241.13 is duplicative of that to which he is entitled under *Zadvydas*, i.e., release from custody. Also, Petitioner does not appear to raise a due process challenge related to his current re-detention. *See id*. at 7 ("Petitioner seeks an injunction against future re-detention without pre-deprivation notice and a hearing. Petitioner therefore includes the following discussion, even though *he does not allege that his current detention was a result of an illegal re-detention*, because it is a necessary prerequisite to seeking that injunction.") (emphasis added).[1] Petitioner does, however, clearly seek an order prohibiting Respondents from re-detaining him without due process or the conditions described above, and prohibiting his removal to a third county without due process or to any country where he is likely to face imprisonment or other punishment. Dkt. 8 at 27. The Court will therefore consider whether this additional requested relief is appropriate.

Petitioner asserts that there is a significant likelihood Respondents would seek to re-detain him unlawfully, pointing to Respondents' "policy to round up as many noncitizens as possible." *Id.* at 22 (citing Jose Oliveras, "Trump administration sets quota to arrest 3,000 people a day in anti-immigration agenda," The Guardian (May 29, 2025), https://www.theguardian.com/us-news/2025/may/29/trump-ice-arrest-quota). He further asserts that the

---

[1] Later in the petition, Petitioner states: "His re-detention violated his due process rights and was therefore unlawful." Dkt. 8 at 22. However, because this assertion is conclusory and contradicts his earlier assertion, *see id*. at 7, it is not further addressed.

- 7

government's policy regarding third country removals makes it reasonably likely Respondents would seek to remove him to a third country with punitive intent and result. *Id*. at 17-20, 26.

Respondents assert that Petitioner is not entitled to the requested permanent injunctive relief related to re-detention because he fails to demonstrate that there is more than a "mere possibility" he would be re-detained. *See Torres v. Hermosillo*, C25-2687-LK, 2026 WL 145715, at *8 (W.D. Wash. Jan. 20, 2026) (stating that: "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'") (quoted sources omitted). Respondents further assert that they are solely seeking to remove Petitioner to Russia and do not presently intend to remove him to a third country, *see* Dkt. 12 at 8; Dkt. 13, ¶20, and that Petitioner therefore lacks standing to pursue injunctive relief relating to third country removal because his claims are entirely speculative and not ripe for review. *See Tran v. Bondi*, C25-01897-JLR, 2025 WL 3140462, at *4 (W.D. Wash. Nov. 10, 2025) (finding that, where petitioner presented no evidence respondents sought to remove him to a third country and respondents denied any such intent, petitioner's claims "based on the possibility of third-country removal [were] speculative and invite[d] the court to decide claims that are not part of a live controversy.").

Beyond references to general governmental policies, Petitioner does not identify any evidence to support his contention that it is significantly likely he will be re-detained unlawfully, or that it is reasonably likely Respondents will seek to remove him to a third country without due process or as a part of a punitive policy or practice. The Court, under these circumstances, finds Petitioner's requests for injunctive relief properly denied without prejudice. *See, e.g., Ali v.*

- 8

*Bondi,* C26-73-MLP, 2026 WL 657471, at *3 (W.D. Wash. Mar. 9, 2026); *Tran*, 2025 WL 3140462, at *4.

## IV.   CONCLUSION

Based on the foregoing, this Court ORDERS as follows:

(1)      Petitioner's petition for writ of habeas corpus, Dkt. 8, is GRANTED in part;

(2)      Respondents shall RELEASE Petitioner within **twenty-four (24) hours** of this Order, and shall file a notice with the Court within **forty-eight (48) hours** confirming Petitioner has been released from immigration detention; and,

(3)      Petitioner's requests for injunctive relief are DENIED without prejudice.

Dated this 17th day of March, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

- 9